UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD THACKER, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:20-cv-01440-GMN-DJA |
| vs. ) | |
| ) | **ORDER** |
| DAWN JONES, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 24), filed by Defendants Dawn Jones, Gregory Martin, Michael Minev, Tedoro Manalang, Gregory Bryan, and Martin Naughton (collectively, "Defendants"). Plaintiff Richard Thacker ("Plaintiff") filed a Response,[1] (ECF No. 30), to which Defendants filed a Reply, (ECF No. 31).

Further pending before the Court is Defendants' Motion to Seal, (ECF No. 25). Plaintiff did not file a Response, and the time to do so has passed.

For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment and Motion to Seal.[2]

---

[1] Defendants contend that Plaintiff's Response should be stricken as untimely. (Reply 4:1–16, ECF No. 31). Plaintiff's Response was originally due by May 20, 2022. (*See* Mot. Summ. J. ("MSJ"), ECF No. 24) (setting a May 20, 2022, deadline to respond). On May 2, 2022, the Court entered an Order extending Plaintiff's time to respond until May 23, 2022. (*See generally* Min. Order, ECF No. 28). Plaintiff's Response was filed on May 23, 2022, in compliance with the Court's Order. (*See generally*, Resp., ECF No. 30). Therefore, the Court declines to strike Plaintiff's Response as untimely.

[2] In their Motion to Seal, Defendants petition the Court to seal the entirety of Exhibits A, B, C, D, E, F, G, H, J, K, L, and M to Defendants' Motion for Summary Judgment because the exhibits contain Plaintiff's medical records as well as references to Plaintiff's medical records. (Mot. Seal 1:17–2:9, ECF No. 25). Because these exhibits relate to Defendants' Motion for Summary Judgment, the Court applies a "compelling reasons" standard. *See, e.g., Kennedy v. Watts*, No. 3:17-cv-0468, 2019 WL 7194563, at *2 (D. Nev. Dec. 23, 2019) (applying compelling reasons standard because a motion for summary judgment is "unquestionably" more than tangentially related to the merits of a case). Many courts in the Ninth Circuit "have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records." *Steven City Broomfield v.*

## I. BACKGROUND

This case arises from Defendants alleged deliberate indifference to Plaintiff's serious medical need while Plaintiff was incarcerated at High Desert State Prison ("HDSP") and Ely State Prison ("ESP"). (*See generally* Compl., ECF No. 1). Specifically, Plaintiff claims that from November 1, 2018, to July 27, 2020, Defendants denied him direct-acting antiviral ("DAA") drugs to treat his Hepatitis-C infection ("HCV"). (*Id.* ¶¶ 20–26). HCV is a viral infection that causes liver inflammation and can lead to severe liver damage. (Michael Minev Decl. ¶ 4, Ex. N to Mot. Summ. J. ("MSJ"), ECF No. 24-15). An HCV infection that lasts longer than six months is considered chronic. (*Id*. ¶ 6, Ex. N to MSJ). Chronic HCV can cause fibrosis in the liver, which may lead to cirrhosis, the late stage of scarring. (*Id*. ¶ 7, Ex. N to MSJ). HCV patients with late-stage cirrhosis can experience jaundice, leg swelling, abdomen fluid, abnormal blood tests, enlarged veins, spider angiomata, palmer erythema, gynecomastia, hepatic encephalopathy, bacterial peritonitis, or combined kidney and liver failure. (*Id.* ¶ 8, Ex. N to MSJ).

Medical Directive ("MD") 219 governs the treatment of HCV at the Nevada Department of Corrections ("NDOC"). (MD 219 at 2, Ex. 6 to Resp., ECF 30-1). MD 219 establishes a priority level system for determining whether an inmate should be given DAA treatment. (*Id.* at 3, Ex. 6 to Resp.). This priority level system guarantees that all HCV patients will receive DAAs as needed and required to treat their condition, while at the same time providing medical personnel discretion and flexibility to determine whether DAA treatment is medically necessary. (*Id.*, Ex. 6 to Resp.). The level system is primarily based on an inmate's Aspartate

---

*Aranas*, No. 3:17-cv-00683, 2020 WL 2549945, at *2 (D. Nev. May 19, 2020) (collecting cases). Here, the entirety of the relevant exhibits contain Plaintiff's sensitive health information or references to Plaintiff's health information, as well as his medical history and treatment records. Therefore, Plaintiff's interest in preserving his medical privacy outweighs the public's need for direct access to the medical records. *See Howard v. Cox*, No. 2:17-cv-01002, 2021 WL 4487603, at *2 (D. Nev. Sept. 30, 2021). Accordingly, Defendants' Motion to Seal is GRANTED.

1  Aminotransferase Platelet Ratio Index ("APRI") score and Fibrosure level.[3] (*Id.*, Ex. 6 to
2  Resp.). MD 219 provides that inmates whose APRI score is (1) greater than or equal to two or
3  (2) is greater than 0.69 and has a Fibrosure level in the F3 or F4 category "should be prioritized
4  for treatment."[4] (*Id.*, Ex. 6 to Resp.). Conversely, MD 219 explains that an inmate is not
5  entitled to DAA treatment if their APRI score is (1) less than 0.70 or (2) greater than or equal to
6  0.70 and has a Fibrosure score in the F1 or F2 category. (*Id.*, Ex. 6 to Resp.).
7       Plaintiff was diagnosed with HCV twenty-eight years ago. (Richard Thacker Decl. ¶ 4,
8  Ex. 1 to Resp., ECF No. 30). From 2018 to 2020, Plaintiff was incarcerated at HDSP or ESP.
9  (Movement History at 1, Ex. I to MSJ, ECF No. 26-4). At both facilities, doctors regularly
10 monitored Plaintiff's APRI score and Fibrosure level. (*See* Progress Notes at 2–15, Ex. F to
11 MSJ, ECF No. 26-3); (Physician's Orders at 63–87, Ex. E to MSJ, ECF No. 26-2); (*see also*
12 Lab Corp. Results, Ex. C to MSJ, ECF No. 26-1). In addition to monitoring Plaintiff's APRI
13 score and Fibrosure level, Defendants provided Plaintiff with other forms of medical testing
14 and treatment. Specifically, Plaintiff was referred to and saw a gastroenterologist, (*see*
15 *generally* Digestive Disease Center Notes, Ex. K to MSJ, ECF No. 26-4), and separately
16 received an ultrasound which determined that Plaintiff was not suffering from any "acute
17 abdominal pathology." (William B. Ririe Medical Report at 2, Ex. H to MSJ, ECF No. 26-4).
18 Furthermore, Plaintiff had a colonoscopy and esophagogastroduodenoscopy performed to
19 observe his liver and intestines. (Digestive Disease Center Notes at 25–34, Ex. K to MSJ).
20 ///
21 ///
22
23
24 [3] The APRI formula "measures the aminotransferase (AST) enzyme created by the liver and compares it to the number of the platelets—the cells that cause blood to clot—in the body." (Michael Minev Decl. ¶ 10, Ex. N to MSJ). The Fibrosure score "evaluates the patient's blood to assess liver fibrosis from 0.00 to 1.00." (*Id*. ¶ 11,
25 Ex. N to MSJ).
[4] An inmate whose fibrosis level exceeds a 0.72 to 0.74 range falls within the F3 to F4 Fibrosure category. (Michael Minev Decl. ¶ 11, Ex. N to MSJ).

Before May 2020, Plaintiff's APRI score or Fibrosure level, whether viewed individually or in combination, never exceeded the levels set out by MD 219 such that DAA treatment was warranted. (*See* Lab Corp. Results at 28–31, 35–49, Ex. C to MSJ); (Inmate Grievance at 1, Ex. 8 to Resp., ECF No. 30); (Progress Notes at 7, Ex. F to MSJ); (Inmate Grievance at 5, Ex. 2 to Resp., ECF No. 30); (Inmate Grievance at 1, Ex. 4 to Resp., ECF No. 30). In May 2020, however, Plaintiff's lab results showed that his APRI score 0.9 and he had an F3 Fibrosure level. (Chronic Care at 9, Ex. J to MSJ, ECF No. 26-4); (Lab Corp. Results at 55, Ex. C to MSJ). As stated, MD 219 notes that inmates whose APRI is greater than 0.69 and have a Fibrosure in the F3 or F4 level "should be prioritized for treatment." (MD 219 at 3, Ex. 6 to Resp). Thus, in May 2020, Plaintiff should have been prioritized for DAA treatment under MD 219. In August 2020, Plaintiff initiated the present lawsuit, claiming Defendants denied him adequate and timely care for his HCV.[5] (*See generally* Compl.).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253,

---

[5] Following the commencement of this action, Plaintiff began treatment with EPCLUSA, a form of DAA, in the spring of 2021. (MSJ 10:14–17); (Physician's Orders, Ex. E to MSJ).

288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation marks and citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quotation marks and citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is "merely colorable or is not significantly probative, summary judgment may be granted." *See id.* at 249–50 (internal citations omitted).

///
///
///
///
///
///
///

### III.    DISCUSSION

Defendants now move for summary judgment, arguing that they were not deliberately indifferent to Plaintiff's serious medical need.[6] (MSJ 12:13–15:25, ECF No. 24). Additionally, Defendants contend that even if they were deliberately indifferent to Plaintiff's serious medical needs, they are nevertheless entitled to qualified immunity.[7] (*Id*. 17:8–18:16). The Court will first examine whether Defendants were deliberately indifferent to Plaintiff's serious medical need.

To maintain an Eighth Amendment claim based on inadequate medical treatment under 42 U.S.C. § 1983, an inmate must show "deliberate indifference to [a] serious medical need[]." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In the Ninth Circuit, the test for deliberate indifference consists of two parts. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, a plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *Gamble*, 429 U.S. at 104. Second, the plaintiff must show that the defendant[s'] response to the need was deliberately indifferent. *Id*. "Prison

---

[6] Although Plaintiff's Complaint identified that his claim was based on Defendants' denial of HCV treatment from 2018 to 2020, (Compl. ¶ 20), he contends in his Response that he is seeking relief for Defendants denying him medical care beginning in September 2016. (Resp. at 17, ECF No. 30). The applicable statute of limitations for a § 1983 action, regardless of the facts or legal theory underlying a particular case, is the forum state's statute of limitations for personal injury actions. *Sunseri v. Williams*, No. 2:19-cv-00967, 2022 WL 542701, at *2 (D. Nev. Feb. 22, 2022) (citing *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999)). In Nevada, the statute of limitations for filing a personal injury action is two years. NRS § 11.190(4)(e); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989). Federal law determines when a claim accrues for a § 1983 action. *See Elliot v. City of Union City*, 25 F.3d 800, 801–02 (9th Cir. 1994). A claim accrues when the plaintiff knows, or should know, of the injury on which the cause of action is based. *See Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996). Here, Plaintiff filed his Complaint on August 4, 2020. (*See generally Compl*.). Therefore, a claim relying on events before August 4, 2018, would be time-barred.

[7] For the reasons set forth below, the Court finds that Defendants were not deliberately indifferent to Plaintiff's serious medical need. "If no constitutional right was violated, the court need not inquire further" into any qualified immunity analysis. *Flores v. Ryan*, No. 01-cv-1724, 2002 WL 31319901, at *1 (N.D. Cal. Oct. 10, 2002). Accordingly, the Court declines to further examine any qualified immunity argument.

officials are deliberately indifferent to a prisoner's serious medical need[] when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation marks and citation omitted). "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, a Plaintiff must "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. Cal. Dep't of Corrections and Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013).

There is no doubt that Plaintiff's HCV presents a serious medical need. *See, e.g.*, *Grumbles v. Livingston*, 706 F. App'x 818, 819 (5th Cir. 2017); *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004); *Mitchell v. Nobles*, 873 F.3d 869, 874 (11th Cir. 2017); *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585–86 (6th Cir. 2013); *Ibrahim v. D.C.*, 463 F.3d 3, 6–7 (D.C. Cir. 2006); *Helveston v. Brooks*, No. 3:17-cv-00154, 2019 WL 13241624, at *5 (D. Ala. May 29, 2019). Therefore, the Court's analysis focuses on whether Defendants' response to this need was deliberately indifferent.

**A. Treatment Versus Monitoring**

Defendants argue that despite denying Plaintiff DAA medication to treat his HCV, their treatment plan was not deliberately indifferent to his serious medical need because the progression of Plaintiff's disease was carefully monitored through chronic care labs and chronic care encounters. (MSJ 13:6–14:13). In response, Plaintiff contends that the applicable standard for HCV treatment required Defendants to provide him with DAA medication.[8] (Resp. at 14–16, ECF No. 30).

---

[8] Plaintiff's contention is based on a case from the United States District Court for the District of Pennsylvania, *Abu-Jamal v. Wetzel*, in which the court found that the proper standard of care for all individuals with HCV is the prescription of DAAs. *See Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *4, *10 (M.D. Pa. Jan. 3, 2017), *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1125, 2017 WL 3123434 (3d Cir. Apr. 13, 2017), *and appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1156, 2017 WL 3160959 (3d Cir. Apr. 14, 2017). But "as a district court case from another circuit, *Abu-Jamal*'s findings of law is only persuasive, not binding." *Workman v. Atencio*, No. 1:16-cv-00309, 2018 WL 4496628, at *5 (D.

Several United States Circuit Courts of Appeals as well as District Courts within the Ninth Circuit have found that monitoring an inmate's HCV condition constitutes constitutionally sufficient treatment in the absence of evidence that cirrhosis or fibrosis is likely occurring. *See Woodcock v. Correct Care Solutions*, 861 Fed. App'x 654, 661 (6th Cir. 2021); *Roy v. Lawson*, 739 F. App'x 266, 266–67 (5th Cir. 2018) (per curiam); *Black v. Alabama Dep't of Corr.*, 578 F. App'x 794, 795–96 (11th Cir. 2014) (per curiam); *King v. Calderwood*, No. 2:13-cv-02080, 2016 WL 4771065, at *5 (D. Nev. Sept. 12, 2016), *aff'd sub nom. King v. Cox*, 692 F. App'x 398 (9th Cir. 2017); *Klein v. Bryan*, No. 3:19-cv-00300, 2022 WL 17352575, at *2 (D. Nev. Dec. 1, 2022); *Nidez Valencia v. Corizon, LLC*, No. 17-cv-03632, at *5 (D. Ariz. May 20, 2019); *Workman v. Atencio*, No. 1:16-cv-00309, 2018 WL 4496628, at *5 (D. Idaho Sept. 19, 2018). As such, so long as an inmate's HCV scores remains below a certain level, his preference for DAAs rather than monitoring amounts to nothing more than a disagreement over appropriate treatment. *See Webb v. Aranas*, No. 3:17-cv-00427, 2018 WL 5849839, at *3 (D. Nev. Nov. 6, 2018) ("Permitting Plaintiff to attack [MD 219] as inappropriate under the guise of deliberate indifference would be to impermissibly constitutionalize a medical negligence claim."); *see also Drumwright v. Pascua*, No. 1:20-cv-01055, 2021 WL 675359, at *4 (E.D. Cal. Feb. 22, 2021) ("[A] prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference.") (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). Therefore, the relevant inquiry is whether Defendants continually and closely monitored Plaintiff's HCV condition. If they did, and Plaintiff's APRI score and Fibrosure level did not exceed the standards codified in MD 219, Defendants were not deliberately indifferent to Plaintiff's serious medical need.

---

Idaho Sept. 19, 2018). Further, "[b]ecause the Ninth Circuit has not definitely spoken on the issue of whether, and in what circumstances, DAAs constitute the constitutionally required standard of care for Hepatitis C patients, the Court finds that *Abu-Jamal*'s finding of law, without more, is insufficient to establish the standard of care[.]" *Id*.

Here, Defendants have provided evidence showing that Plaintiff's HCV was regularly monitored, and that he received treatment, albeit treatment with which he disagreed, for his condition. Specifically, the record demonstrates that from 2018 to 2020, lab work was regularly preformed monitoring Plaintiff's HCV. (*See* Progress Notes at 2–15, Ex. F to MSJ, ECF); (Physician's Orders at 63–87, Ex. E to MSJ); (*see also* Lab Corp. Results, Ex. C to MSJ). Moreover, the record shows that Plaintiff received additional treatment in the form of an ultrasound on his abdomen and a referral to a cardiologist which culminated in a colonoscopy and esophagogastroduodenoscopy being performed. (Digestive Disease Center Notes at 25–34, Ex. K to MSJ); (William B. Ririe Medical Report at 2, Ex. H to MSJ). As previously noted, Plaintiff's APRI score and Fibrosure levels did not warrant treatment pursuant to MD 219 until May 2020. Thus, Defendants decision to monitor Plaintiff's HCV rather than provide him treatment was not deliberately to his serious medical need before May 2020 because Defendants carefully monitored Plaintiff's HCV through chronic labs and chronic care encounters, in addition to referrals to specialists.

In the absence of any identifiable deliberate indifference by Defendants to Plaintiff's serious medical need, Plaintiff's argument is ultimately about the adequacy of his treatment. *See Roy*, 739 F. App'x at 267 ("The true nature of [the plaintiff]'s complaint is a challenge to the medical judgment exercised by prison medical staff in determining the appropriate course of his Hepatitis C treatment, which does not give rise to a constitutional violation."). But an inmate's disagreement with the testing and treatment he has received does not amount to an Eighth Amendment violation. *See Drumwright*, 2021 WL 675359, at *4 ("[A] prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference.") (citation omitted); *Bedard*, 2022 WL 981127, at *6 ("[T]o the extent that Bedard's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not

///

amount to deliberate indifference."); *Nidez Valenciz*, 2019 WL 2173681, at *5 ("Plaintiff's disagreement with the course of care does not amount to deliberate indifference.").

Therefore, from 2018 to May 2020, Plaintiff has demonstrated, at most, a difference of opinion with Defendants as to his proper course of treatment rather than an unconstitutional deliberate indifference to a serious medical condition. However, following May 2020, Plaintiff's APRI score and Fibrosis level rose to a level which indicated that he should have been prioritized for HCV treatment pursuant to MD 219, and Defendants subsequently did not immediately provide said treatment. Accordingly, the Court must examine whether this delay resulted in Defendants' deliberate indifference towards Plaintiff's serious medical need.

### B. Harm Caused by Defendants' Delay in Treatment

Even if Defendants unreasonably delayed in treating Plaintiff's HCV past May 2020, Plaintiff's deliberate indifference claim still fails. To prove his deliberate indifference claim, Plaintiff must "demonstrate that the [D]efendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (requiring a showing of harm caused by the indifference). Thus, "'[w]here an inmate alleges that delay of medical treatment evinces deliberate indifference, he must show that the delay led to further injury." *Fitzgerald v. Martin*, No. 3:17-cv-0278, 2022 WL 2658976, at *8 (D. Nev. June 2, 2022) (citation omitted).

Here, Plaintiff alleges that because of Defendants' delay and denial of HCV treatment, his HCV condition advanced from "an F2 to an F3, with additional scarring to Plaintiff's liver, and possible permanent damage caused thereby, that may never be known just how severe the damage is." (Resp. at 17–18). Although the Court is sympathetic to Plaintiff's condition, this argument fails to show that Plaintiff suffered any harm because of an alleged delay in treatment. The claim that an "increased APRI [or Fibrosure] score necessarily indicates interim or imminent liver damage is an unjustified assumption." *Webb v. Aranas*, No. 3:17-cv-00427,

2018 WL 5849839, at *3 (D. Nev. Nov. 6, 2018); *Nidez Valenciz v. Corizon, LLC*, No. 17-cv-03632, 2019 WL 2173681, at *5 (D. Ariz. May 20, 2019) ("Plaintiff's speculation that his APRI score will continue to rise and possibly cause permanent liver damage is insufficient to create a genuine issue of material fact that his course of treatment is deliberately indifferent to his serious medical needs."). Furthermore, Plaintiff offers no evidence to support his contention that his liver suffered additional scarring or permanent damage due any delay in treatment. *See Klein v. Bryan*, No. 3:19-cv-00300, 2022 WL 17352575, at *2 (D. Nev. Dec. 1, 2022) ("Klein's proffered evidence does not establish that Defendants' alleged delay in treatment of his HCV caused Plaintiff to develop cirrhosis."); *Olsen v. Nevada Department of Corrections*, No. 3:18-cv-0149, 2022 WL 1516616, at *5 (D. Nev. Jan. 12, 2022) ("Olsen does not provide any evidence to show that he suffered liver or internal damage because of the alleged delay in HCV treatment."); *Hernandez v. Howell*, No. 2:18-cv-01449, 2022 WL 17414529, at *2 (D. Nev. Dec. 5, 2022) (finding that plaintiff failed to demonstrate that defendants' actions caused his injuries where plaintiff "offer[ed] no evidence showing that the alleged delays in treatment specifically caused plaintiff to develop cirrhosis or other medical harms"). Instead, Plaintiff's medical records—at least those provided to the Court by the parties—indicate that Plaintiff's liver experienced no additional scarring as a result of Defendants chosen treatment method.

On these facts, Defendants' decision to continue monitoring Plaintiff from 2018 to May 2020 pursuant to MD 219 was not deliberately indifferent. Following May 2020, even if Defendants unreasonably delayed in providing Plaintiff HCV treatment, Plaintiff has not provided evidence, nor does the record show, that he suffered further injury as a result of said delay. Therefore, Plaintiff has failed to provide evidence to establish a genuine issue of material fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with Plaintiff's medical treatment and whether such a delay caused him harm. *See Hallett*, 296

F.3d at 744.  Accordingly, Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claim for deliberate indifference to a serious medical need.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Defendants' Motion for Summary Judgment (ECF No. 24) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal, (ECF No. 25), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall close the case and enter judgment accordingly.

**DATED** this   6   day of January 2023.

_____
Gloria M. Navarro, District Judge
United States District Court